[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
STATEMENT OF THE APPEAL
The plaintiffs, Frances and John Hickey, appeal a decision of the defendant, Town of Stamford Zoning Board of Appeals (ZBA), granting a Special Exception to the City of Stamford acting for the benefit of the Ferguson Library (Application 069-94) to construct a 23,000 square foot library, with a parking lot for 75 automobiles, located on a 5.77 acre parcel of land. Also named as defendants are the City of Stamford and the Ferguson Library. The decision of the ZBA followed a public hearing held on October 12, 1994. The ZBA's decision was made pursuant to the City of Stamford Zoning Regulations § 19.3.2a, and Article III, § 4.2.3. The plaintiffs commenced the appeal pursuant to General Statutes § 8-8.
PROCEDURAL HISTORY
On September 7, 1994, the City of Stamford filed an application with the ZBA requesting a special exception. (Return of Record, [ROR], Item 1: Special Exception Application.) On October 12, 1994, the ZBA held a public hearing to consider the application. (ROR, Item 22A: Transcript of Public Hearing.) On November 2, 1994, the ZBA granted the application. (ROR, Item 26: Zoning Board of Appeals Certificate of Decision.) On November 17, 1994, the approval was published in the Stamford Advocate. (ROR, Item 27: Legal Notice.) The defendant ZBA was served by the deputy sheriff of Fairfield County on November 30, 1994. The plaintiffs filed an appeal of this decision on December 2, 1994. The Commission filed the return of record on March 29, 1995. On May 3, 1995, the plaintiffs filed their brief, and the ZBA filed its brief in reply on June 28, 1995. A hearing was held before this court on August 30, 1995.
On September 7, 1994 the City of Stamford filed an application for the benefit of The Ferguson Library, pursuant to a Resolution of the Stamford Board of Education adopted on June 8, 1993. (ROR, Item 1.) The application seeks a special exception to build a public library in a P-20 residential zoning district. (ROR, Item 1.) The library will be 23,000 square feet, with CT Page 14561 parking for 75 automobiles, and is located on a 5.77 acre site. (ROR, Item 1.) The library will serve a community population of approximately 35,000 people in the Turn of River and North Stamford areas. (ROR, Item 1.) The applicant's building is designed to replace the current library located on High Ridge Road which is the most heavily used branch in the State of Connecticut. (ROR, Item 1.) The new library will be built adjacent to the Turn of River Middle School. (ROR, Item 15: Letter to John A. Sedlak, Chairman, from John W. Smart, Chairman, Planning Board of the City of Stamford dated October 5, 1994 with attachment.) On November 2, 1994, the ZBA granted the application for special exception. (ROR, Item 26.)
The plaintiffs appeal the decision of the ZBA on the grounds that the ZBA acted illegally, arbitrarily, and in abuse of its discretion in approving the application in the following regards: "a) The ZBA did not act in accordance with the public interest; b) The actions of the ZBA were not the most appropriate development of the neighborhood. c) The ZBA did not consider the impact of the proposed use with the public need at this particular location. d) The ZBA accepted testimony subsequent to the closing of the public hearing." (Plaintiff's Appeal, § 14.) At the hearing held on August 30, 1995, the plaintiffs withdrew the issue regarding ex parte communications.
JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board of appeals to the superior court. In order to take advantage of a statutory right of appeal, parties must comply strictly with the statutory provisions that create such a right. Simko v. Zoning Board of Appeals, 206 Conn. 374,377, 538 A.2d 202 (1988). The statutory provisions are mandatory and jurisdictional in nature and failure to comply will result in dismissal of an appeal. Id., 377.
I. Aggrievement
Aggrievement must be proven in order to establish the court's jurisdiction over a zoning appeal. Connecticut Resources RecoveryAuthority v. Planning Zoning Commission, 225 Conn. 731, 739
n. 12, 626 A.2d 705 (1993). An aggrieved person is a "person aggrieved by a decision of a board . . . ." General Statutes § 8-8 (a)(1). This section defines "aggrieved person" to include "any person owning land that abuts or is within a radius CT Page 14562 of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a)(1);McNally v. Zoning Commission, 225 Conn. 1, 6, 621 A.2d 279
(1993).
At a hearing held August 30, 1995, before this court, the plaintiffs provided evidence of their ownership of property located at 107 Vine Road which abuts the parcel that was the subject of the board's decision. Therefore, this court finds that the plaintiffs were aggrieved pursuant to General Statutes §8-8 (a)(1).
II. Timeliness
Under General Statutes § 8-8 (b) an appeal must be commenced within "fifteen days from the date that notice of the decision was published." On November 17, 1994, the approval was published in the Stamford Advocate. (ROR, Item 27.) Pursuant to General Statutes § 8-8 (e), service was made on Lois Pont-Briant, Town Clerk of Stamford, and on John A. Sedlak, Chairman of the ZBA on November 30, 1994. The plaintiffs filed an appeal of this decision on December 2, 1994. Therefore, the plaintiff's appeal was timely.
SCOPE OF JUDICIAL REVIEW
"When ruling upon an application for a special permit a planning and zoning board acts in an administrative capacity."Double I Limited Partnership v. Planning Zoning Commission,218 Conn. 65, 72, 588 A.2d 624 (1991). "The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated because of the particular topography, traffic problems, neighboring uses, etc., of the site." (Internal quotation marks omitted.) Whisper Wind Development Corp. v. Planning ZoningCommission, 32 Conn. App. 515, 519, 630 A.2d 108 (1993), aff'd,229 Conn. 176, 640 A.2d 100 (1994). "`The zoning commission has no discretion to deny the special [permit] if the regulations and statutes are satisfied.'" (Internal citations omitted.) Felsmanv. Zoning Commission, 31 Conn. App. 674, 678, 626 A.2d 825
(1993).
"Conclusions reached by the commission must be upheld by the CT Page 14563 trial court if they are reasonably supported by the record . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." (Citations omitted; internal quotation marks omitted.) DeBeradinis v. Zoning Commission,228 Conn. 187, 198, 635 A.2d 1220 (1994). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Double I Limited Partnership v. Planning ZoningCommission, supra, 218 Conn. 72. "The burden of proof to demonstrate that the board acted improperly is on the plaintiffs." (Internal quotation marks omitted.) Adolphson v.Zoning Board of Appeals, 205 Conn. 703, 707, 535 A.2d 799 (1988). "It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." (Internal quotation marks omitted.) ConnecticutResources Recovery Authority v. Planning Zoning Commission,225 Conn. 731, 744, 626 A.2d 705 (1993).
The plaintiffs appeal on the grounds that the Commission acted unlawfully, in excess of its authority, erroneously, arbitrarily, capriciously and in abuse of its discretion in that it failed to take into account the public convenience and welfare. (Plaintiffs' Memorandum of Law.) Specifically, plaintiffs claim that the board did not consider the impact on the area, the appropriateness of the use for the area, and the impact in relation to the public interest and need for the use. (Plaintiff's Memorandum of Law.) The ZBA argues that the public record demonstrates that the board did consider all the factors mandated by the Regulations of the City of Stamford, § 19.3.2. (Defendant's Memorandum of Law.)
General Statutes § 8-2 (a) provides, in pertinent part, that special permits may be subject to municipal regulations "necessary to protect the public health, safety, convenience and property values." An applicant must satisfy all the conditions provided by municipal regulation before a special permit can be granted. Whisper Wind Development Corp. v. Planning ZoningCommission, supra, 32 Conn. App. 520. Despite compliance with technical requirements, a special permit can be denied on the basis of regulations that are "general in nature." Id., 520-21. The City of Stamford regulations provide the application for proposed use should be granted if it is "in accordance with the CT Page 14564 public convenience and welfare after taking into account, where appropriate . . . ." Regs., City of Stamford, § 19.3.2. The regulations then specify factors to be considered.[1] The Board's decision states "the proposed use or structure or the proposed extension or alteration of an existing use or structure is in accordance with the public convenience and welfare after taking into account, where appropriate . . ." and the board quotes the Regulations of the City of Stamford, § 19.3.2. (ROR, Item 26.)[2]
The record contains substantial evidence to support the ZBA's decision. A neighborhood impact study was conducted by J.J. Kyle and Associates which concluded, "[b]ased upon our research and analysis of the data secured, it is our opinion that the proposed branch library would have no negative effect on the surrounding neighborhood." (ROR, Item 21, Exhibit E: Neighborhood Impact Study.) A real estate appraiser testified at the public hearing that there would be no negative effect on property values. (ROR, Item 22A, p. 39.) The Zoning Board staff submitted a study which concluded, "this application satisfies all applicable zoning standards and appears sensitively designed to maintain a low intensity, landscaped, open character in harmony with adjacent single family properties." (ROR, Item 16: Letter to John A. Sedlak, Chairman, from Norman P. Cole, principle planner, Zoning Board, City of Stamford.) The lighting engineer testified at the public hearing that there would be a four-foot landscape berm and landscaping to shield adjacent properties from lighting. (ROR, Item 22A, p. 18).
A traffic and parking study was conducted, which made some recommendations. "If implemented, these improvements would accommodate both the school traffic and the proposed Branch Library to yield a future Level of Service "C" or better flow condition at all critical periods."[3] (ROR, Item 21, Exhibit D: Traffic Analysis to Richard Frattaroli from Howard M. Mirsky, P.E., Greiner, Inc.) At the public hearing the town attorney testified that the Director of Traffic and Parking issued a report which indicated that "traffic will actually be improved because of the signalization and road widening. The traffic director was clear that the work being done there would have had to be done just to accommodate . . . the traffic problems being experienced by the middle school. So the library is not adding to the traffic problems." (ROR, Item 22A, p. 9.) CT Page 14565
As to the public interest and need for the use, the president of the library explained that space at the current facility is so limited that since 1979 it has been using portable classrooms. (ROR, Item 22A, p. 44.) The librarian also discussed the advantages of building the library in close proximity to the middle school, highlighting proposed field trips and orientation sessions for the students, programming for classes, after hours supervised study hall, and encouraging use of the library by the students. (ROR, Item 22A, pp. 45-46.)
Several neighbors spoke at the hearing and/or sent letters expressing their opposition to the library. "I have a grave concern regarding the chosen site for the new, state-of-the-art, Turn of River Library branch . . . This concern involves the enormous volume of traffic that is already present on that road, and the additional traffic that the library will bring in. The image of cars from Turn of River Middle School, merging with additional vehicles from a huge library facility, merging on to Vine Road where more cars are traveling, leads without a doubt to a very hazardous condition." (ROR, Item 22, #2: Statement by William D. Ferri.) "The new proposed site is out of the way, out of sight and will cause more unreasonable traffic and unsafe situations for the school children as well as the neighborhood children and seniors in the area." (ROR, Item 22, #3: Letter to Zoning Board of Appeals from Gail G. and Stephen A. Trell.) "We understand that sidewalks on Vine Road will be narrowed to the danger of pedestrians, especially students. And the project will add vehicles and may attract loiterers who pose a danger to the students . . . . We are concerned about the threat of burglaries from the rear of our properties . . . . Our neighborhood streets . . . have many blind curves and hills. There are many small children living here." (ROR, Item 22, #4: Letter to John A. Sedlak, Chairman, from Ted and Diane Sierpina.) A petition was submitted with more than 200 signatures in opposition. (ROR, Item 22, #6.) "The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." (Citation omitted; internal quotation marks omitted.) DeBeradinis v. ZoningCommission, supra, 228 Conn. 198.
Accordingly, there is evidence on the record to support the ZBA's granting of a special exception permit. The evidence supports a consideration of the impact on the area, the CT Page 14566 appropriateness of the use for the area, and the impact in relation to the public interest and need for the use.
For all the foregoing reasons, the plaintiffs' appeal is dismissed.
KARAZIN, J.